E-FILED
Wednesday, 20 November, 2019  04:18:04 PM
Clerk, U.S. District Court, ILCD



FILED
NOV 20 2019
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 19-MJ- 7233 |
| White iPhone 8 Plus, Model MQ9F2LL/A, Serial No. F17W32PMJCM1, IMEI 35 301109 193434 9, more particularly described in Att. A | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

White iPhone 8 Plus, Model MQ9F2LL/A, Serial No. F17W32PMJCM1, IMEI 35 301109 193434 9, more particularly described in Att. A.

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 2252A | Child Pornography Trafficking |
| 18 USC Section 2251(a) | Sexual Exploitation of a  Child |
| 18 USC Section 1591 | Sex Trafficking of a Minor |

The application is based on these facts:

See Affidavit of FBI SA Michael A. Carter

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Michael Carter

*Applicant's signature*

Michael A. Carter, Special Agent, FBI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

s/Eric Long

Date:  _____11/20/2019_____

*Judge's signature*

City and state:  Urbana, Illinois

Eric I. Long, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT

I, Michael A. Carter, Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, having been first duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), assigned to the Springfield, Illinois, Division.  I have been employed as a Special Agent for the FBI since August 2016.  As part of my duties, I investigate violations of federal law relating the online exploitation of children, including violations pertaining to the illegal possession, receipt, transmission, and production of material depicting the sexual exploitation of minors. Prior to becoming a Special Agent with the FBI, I was a Police Officer for the Johnson City Police Department in Johnson City, Tennessee, for approximately five years and three months. During my tenure, I investigated various misdemeanor and felony violations of law, and was the affiant on numerous state search warrants.

2.    I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, child exploitation and child pornography offenses enumerated in Title 18, United States Code, Sections 2252 and 2252A *et seq*. As an FBI Special Agent, I am authorized to execute warrants issued under the authority of the United States.

1

3.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.     The property to be searched is a White iPhone 8 Plus, Model MQ9F2LL/A, Serial No. F17W32PMJCM1, IMEI 35 301109 193434 9, hereinafter the "Device." The Device is currently located at the FBI, Champaign Resident Agency, 2117 W. Park Ct., Champaign, Illinois 61821.

6.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B, which items constitute instrumentalities, fruits, and evidence of the violations of Title 18, United States Code, Sections 2252, 2252A, 2251(a) and 1591.

7.     The statements contained in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe

2

are necessary to establish probable cause to believe that evidence, fruits, and

instrumentalities of the violations of Title 18, United States Code, Sections 2252, 2252A,

2251(a) and 1591 are presently located on the Device. Unless specifically indicated

otherwise, all conversations and statements described in this affidavit are related in

substance and in part only.

## RELEVANT STATUTES

8.      This investigation concerns alleged violations of Title 18, U.S.C. § 2252A

relating to material involving the sexual exploitation of minors:

a.  **Child Pornography Trafficking (18 U.S.C. § 2252):** This investigation
    concerns alleged violations of **18 U.S.C. § 2252,** which generally prohibits
    a person from knowingly transporting, shipping, receiving, distributing,
    reproducing for distribution, or possessing any visual depiction of minors
    engaging in sexually explicit conduct when such visual depiction was
    either mailed or shipped or transported in interstate or foreign commerce
    by any means, including by computer, or when such visual depiction was
    produced using materials that had traveled in interstate or foreign
    commerce.  It is also a crime to attempt to commit this offense.

b.  **Child Pornography Trafficking (18 U.S.C. § 2252A):** This investigation
    also concerns alleged violations of **18 U.S.C. § 2252A,** which generally
    prohibits a person from knowingly mailing, transporting, shipping,
    receiving, distributing, reproducing for distribution, or possessing any
    child pornography, as defined in 18 U.S.C. § 2256(8), when such child
    pornography was either mailed or shipped or transported in interstate or
    foreign commerce by any means, including by computer, or when such
    child pornography was produced using materials that had traveled in
    interstate or foreign commerce.  It is also a crime to attempt to commit this
    offense.

c. **Sexual Exploitation of a Minor:** This investigation also concerns alleged violations of **18 U.S.C § 2251(a)** prohibits any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct if such person intends the visual depiction to be transported in interstate or foreign commerce, by any means, including by using any means or facility of interstate or foreign commerce or mail, or the person transports such visual depiction in interstate or foreign commerce, by any means, including by using any means or facility of interstate or foreign commerce or mail.

d. **Sex Trafficking of Minors**: This investigation also concerns alleged violations of **18 U.S.C §§ 1591 and 1594**, criminalize sex trafficking of minors specifically making it unlawful for anyone who knowingly in or affecting interstate or foreign commerce, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes or solicits by any means, a person or benefits, financially or by receiving anything of value, from the participation in a venture, knowing or in reckless disregard of the fact that the person had not attained the age of 18 and will be caused to engage in a commercial sex act, and attempts and conspires to do the same.

## TECHNICAL TERMS

9.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. **Wireless telephone:** A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range

4

of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. **Digital camera:** A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. **Portable media player:** A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. **GPS:** A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a

mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. **PDA:** A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. **Pager:** A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

g. **IP Address:** An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

6

h. **Internet:** The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

10. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/shop/buy-iphone/iphone-8, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## INVESTIGATION

11. In October 2019, the National Center for Missing and Exploited Children reported CyberTip #56544524 to the Internet Crimes Against Children Task Force. The reporting Electronic Service Provider (ESP), Facebook, located evidence of the transfer of a lewd, pornographic image between a minor female, Jane Doe1,[1] born in February 2005 and Ian J. Dukes, a thirty-six year old adult male. The image depicted a female subject holding her genitalia with her hand.

12. According to the information provided by Facebook, the image described above was uploaded on July 26, 2019, at 01:55:28 UTC. Facebook provided an excerpt of messages immediately preceding and following the uploaded image:

---

[1] The names of the minors involved in this investigation are known to law enforcement, but not referenced here to protect their privacy. 18 U.S.C. 3509(d).

(July 26, 2019 at 01:54:40 UTC) Ian Dukes: Ok
(July 26, 2019 at 01:55:18 UTC) Jane Doe1: Just save the video
(July 26, 2019 at 01:55:23 UTC) Jane Doe1: And you can see it later.
(July 26, 2019 at 01:55:28 UTC) Jane Doe1: This image was uploaded.
(July 26, 2019 at 01:55:41 UTC) Jane Doe1: Thats a screen shot of a video.
(July 26, 2019 at 01:56:03 UTC) Ian Dukes: Ok.
(July 26, 2019 at 01:56:11 UTC) Jane Doe1: ….

13.     Facebook provided Facebook profile information for both Jane Doe1 and Dukes, which indicated that Jane Doe1 was a 14 year old minor female, who had an associated email address from a local area school. Dukes' profile contained the following information:

> Recipient Name: Ian Dukes
> Age: 36
> DOB: 01/17/1983
> Gender: Male
> Screen Name: ian.dukes.10
> Profile URL: http://www.facebook.com/ian.dukes.10
> Account ID: 100008772662490

14.     I learned that Jane Doe1 is a student at a local area high school.

15.     I believe the ian.dukes.10[2] Facebook account is associated with Ian J. Dukes, a 36 year old white male, who lives in the Georgetown, Illinois area, based on the same date of birth listed in the CyberTip for this profile.

16.     During the course of this investigation, I became aware of three other reports involving inappropriate solicitation of minors to area law enforcement authorities involving Dukes.

---

[2] The ian.dukes.10 account appears to no longer be active.

8

17.     On August 28, 2019, an adult female, S.R., reported to the Danville Police Department that her ex-boyfriend, Ian Dukes, solicited her minor daughter, Jane Doe2, for sex and that this conversation occurred through Facebook messenger.

18.     Jane Doe2 reported that this conversation occurred when she was a freshman in high school, over the summer, after her birthday, which was in April. Dukes was staying at her residence temporarily. Dukes began texting her on Facebook, messenger asking her if she would have sex with him. She said that he did not directly ask her but referenced sexual acts. She tried to ignore him, deleted the messages, and eventually told her mom what happened.

19.     S.R. also reported prior incidents with Dukes that concerned her. S.R. stated that Dukes tried to solicit her other minor daughter, Jane Doe3, five years prior, when her daughter was approximately thirteen years old. Dukes would get Jane Doe3 high and try to convince her to have sex with him. She said she reported this to Georgetown Police. (I have confirmed that S.R. reported an incident in 2015 involving Dukes and Jane Doe3) S.R. also remembered when she was pregnant with her now six year old son, she saw images of nude children on Dukes' phone. She described one image depicting an eight or ten year old female sitting on a toilet and using her fingers to spread open her labia. This image appeared to have been sent to him from the parent of that child. She stated she told her mother about the images, but did not report them to law enforcement at the time.

20.     In reference to Georgetown Police Department report, in February 2015, S.R. reported that Dukes had inappropriately touched her daughter, Jane Doe3, then 13

years old. S.R. and Dukes lived together at the time of the incident. According to the report, Jane Doe3 said Dukes would send her inappropriate text messages, including, "Have you ever wanted to be fingered?" Jane Doe3 said Dukes would send the messages to her mother's cell phone and instructed her to delete the messages after they were received. Jane Doe3 believed the messages were sent to her in the spring of 2014, making her 13 years old at the time. Jane Doe3 also described a time when Dukes asked if she wanted to smoke a cigarette with him. Jane Doe3's response of "not yet" auto- corrected to "not wet." Dukes replied that he could "make her wet." Jane Doe3 advised Dukes is the one who got her to start smoking cigarettes and introduced her to marijuana. Jane Doe3 said Dukes only touched her one time while at their apartment. Dukes touched her on the upper thigh. Jane Doe3 told the Georgetown Police Department that it was the only time he tried to touch her.

21.   I also located another report to the Danville Police Department in August 2014, by Katelynn A. Knaak, regarding Ian J. Dukes soliciting a 12 year old female for sex. Knaak, an adult female known to law enforcement to engage in prostitution, was speaking with Dukes, a client, via text message when he asked if she knew of any young girls interested in having sex. Knaak told investigators she did not know any young girls, but lied to "Ian" and stated she knew a 12 year old. "Ian" replied "perfect." The conversation continued and "Ian" eventually agreed to pay the 12 year old $200.00 for sex, and Knaak would receive $100.00 for a finder's fee. The cell phone conversation was documented by the Danville Police Department.

22.     On November 15, 2019, Illinois State Police Special Agent Jennifer Smit and I interviewed Jane Doe1. She stated that she met Dukes through a friend who is in eighth grade and whose mother is a friend of Dukes. Jane Doe1 said that Dukes offered her money and drugs in exchange for sex and they communicated primarily through Facebook messenger. Jane Doe1 said Dukes would pick her and her friend up in Urbana, Illinois and drive around offering to buy them food and snacks. Jane Doe1 described that on one occasion in July 2019, Dukes met her alone at Crystal Lake Park in Urbana, Illinois and took her to the parking lot of Ambucs Park (also in Urbana, Illinois). She said that they engaged in vaginal sexual intercourse on that day. Dukes paid her $40 and some "weed" for this encounter. When asked about the images sent to Dukes, she stated that the images could have depicted her, but claimed that another friend of hers sent the images to Dukes, using her account. She said that she did not delete the messages from her account. At the time of the writing of this affidavit, I have received written consent from Jane Doe1 and her foster mother to take over her Facebook Messenger Account. I received written consent from the Illinois Department of Children and Family Services (DCFS) at 3:55 p.m. on November 19, 2019, signed by Jane Doe1's legal guardian, DCFS employee Janet Ahern.

23.     While speaking to Jane Doe1's foster mother, I learned that she had purchased an IPhone 8 plus for Jane Doe1 to use. She stated that sometime during the week of November 3, 2019, she was going through Jane Doe1's phone to ensure that she wasn't doing anything inappropriate. She noticed lewd messages in both Facebook messenger and text messages and deleted the ones she believed were inappropriate. The

11

foster mother purchased the phone, paid the bill, and exercised parental controls over the device. As the owner of the device, I asked her for written consent to take possession of the phone, to which she granted consent. I explained to her that the device would not be examined until a search warrant was applied for and granted.

24.    I know based on my training and experience that forensic artifacts can be forensically recovered from a device, even if text messages and/or images have been deleted from an application.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

26.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

12

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is

reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

s/Michael Carter

Michael Carter, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 20th day of November, 2019.
s/Eric Long

Eric I. Long, Magistrate Judge
United States District Court

14

**Attachment A**

*Property to be Searched*

The property to be searched is a White iPhone 8 Plus, Model MQ9F2LL/A, Serial No. F17W32PMJCM1, IMEI 35 301109 193434 9, hereinafter the "Device."  The Device is currently located at the FBI, Champaign Resident Agency, 2117 W. Park Ct., Champaign, Illinois 61821.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**Attachment B**

*Particular Items to Be Seized*

1.  All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Sections 2252, 2252A, 2251(a) and 1591 and involve Ian J. Dukes since March 1, 2019, including:

    a.   Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in Title 18, United States Code, Section 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2) or sex trafficking.

    b.   In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in Title 18, United States Code, Section 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2), or child erotica.

    c.   Any and all address books, names, and lists of names and addresses of individuals who may have been in communication by use of the computer or by other means for the purpose of distributing or receiving child pornography as defined in Title 18, United States Code, Section 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2) or engaging in sex trafficking.

    d.   Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in Tile 18, United States Code, Section 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2) or sex trafficking.

e.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in Title 18, United States Code, Section 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2) or sex trafficking.

f.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography or sex trafficking.

g.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

h.      Any and all visual depictions of minors.

i.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

j.      Evidence showing Ian J. Dukes state of mind.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

17

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.